IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANDREW R. MORECRAFT,     )
               )
   Plaintiff,      )
               )
   v.         )   Case No. 18-cv-458-RJD
               )
DEANNA BROOKHART, ROB JEFFREYS, )
and DAVID VAUGHN,     )
               )
   Defendants.     )

**ORDER**

**DALY, Magistrate Judge:**

   Plaintiff Andrew Morecraft, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging he was not allowed to engage in group worship sessions in accordance with his Asatru religious practice, and was denied certain ritual items and the opportunity for ritual feasting. Plaintiff's complaint was screened pursuant to 28 U.S.C. § 1915A and he was allowed to proceed on the following claims:

   Count One:  Vaughn and Brookhart substantially burdened Plaintiff's practice of the Asatru religion when they denied him access to group worship services in violation of the First Amendment.

   Count Two:  Director Jeffreys [1] and Warden Brookhart [2] violated Plaintiff's rights under the Religious Land Use and Incarcerated Persons Act ("RLUIPA") when they denied him access to group worship services[3].

---

[1] The Court's screening order named IDOC Director Baldwin as a defendant in Count Two only in his official capacity. Pursuant to Federal Rule of Civil Procedure 25(d), the current director, Rob Jeffreys, is automatically substituted in place of Baldwin. The Clerk of Court is DIRECTED to update the docket sheet accordingly.

[2] The Court's screening order named Lawrence Warden Lamb as a defendant in Count Two only in his official capacity. Pursuant to Federal Rule of Civil Procedure 25(d), the current warden, Deanna Brookhart, is automatically substituted in place of Lamb. The Clerk of Court is DIRECTED to update the docket sheet accordingly.

[3] The Court's screening order (Doc. 7) limited Plaintiff's claims to the denial of access to group worship services. However, in the screening order, the Court contemplated Plaintiff's other complaints concerning the practice of his religion, including the prohibition of outdoor services and group celebrations, and the prohibition on the possession of certain religions items, such as runes. Based on the allegations in the complaint, as well as arguments set forth in the

This matter is now before the Court on Defendants' Motion for Summary Judgment (Doc. 39).   Plaintiff filed a timely response (Doc. 45).   For the reasons set forth below, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

### **Factual Background**

Plaintiff Andrew Morecraft is a practitioner of the Asatru religion (Deposition of Andrew Morecraft, Doc. 40-1 at 3).   As an Asatru practitioner, Plaintiff engages in daily rituals or prayers on an individual basis for which medallions, runes (a set of 24 pieces of wood or plastic with imprinted symbols), an altar cloth, bowl, and hammer are supposed to be used (*Id.* at 3-4, 8). Plaintiff is not allowed to have a rune set in his personal possession, however, there is a rune set available for individual use in the chapel (*Id.* at 3-4).   The Asatru faith also has four days that are recognized as holy days for a group setting (*Id.* at 5).   In 2013, prior to the events giving rise to this lawsuit, Plaintiff was incarcerated at Lawrence and, at that time, group services were held weekly (Doc. 40-1 at 3; Declaration of David Vaughn, Doc. 40-2 at ¶ 8).   In November 2013, Plaintiff was transferred to Menard Correctional Center and, upon his return to Lawrence in 2016, group services for the Asatru religion were no longer allowed (Doc. 40-1 at 3).   The services were discontinued in 2015 due to safety and security concerns relating to the submission of security threat group ("STG") material containing white supremacist ideologies to Defendant Chaplain Vaughn on behalf of a member of the Asatru group purporting to change its membership and voting procedures (Doc. 40-2 at ¶¶ 9-13).

Upon his transfer back to Lawrence in 2016, Plaintiff began requesting group religious

---

parties' summary judgment briefing, the Court finds it appropriate to expand the scope of the claims in Count One and Two to include the prohibition of Plaintiff's possession of a rune set as a violation of RLUIPA and Plaintiff's First Amendment rights.

services and various items required for individual and group worship (*Id.* at ¶ 19).  Plaintiff

testified he wrote many requests to Defendant Vaughn that went unanswered, but it is unclear

when the requests were sent (Doc. 40-1 at 11).  Plaintiff also testified he wrote at least a dozen

kites to Defendant Brookhart, who was the assistant warden of programs at the time, regarding the

practice of his religion (*Id.* at 9).  Plaintiff's first kite to Brookhart was sent on May 8, 2017 (*Id.*).

Brookhart did not often respond to Plaintiff's requests, however, Plaintiff recalls one response

where Brookhart advised Plaintiff he would need to speak with the chaplain (*Id.*).

In addition to these requests and kites, Plaintiff submitted a grievance dated February 21,

2017, complaining that he was being denied fellowship and service for his religion and remarking

that he had notified the chaplain of his religious needs, but had not received any response (*see* Doc.

45 at 21-22).  The counselor received this grievance on February 28, 2017, and responded on

September 15, 2017 that the chaplain had a written proposal that was being considered (*see id.*).

Later, in January 2018, Defendant Vaughn spoke with Plaintiff and another inmate to discuss

Asatru and the steps that would be necessary to organize weekly group services (Doc. 40-1 at 11;

Doc. 40-2 at ¶ 20).  No action was taken in response to this meeting concerning group services,

and Plaintiff kept writing Defendant Vaughn (Doc. 40-1 at 11).  Plaintiff met with Defendant

Vaughn again in July 2018, and was advised that he needed to find volunteers to run group worship

(*Id.*).  Plaintiff submitted a proposal for group worship and other goals for the Asatru religion at

Lawrence in September 2019 (Doc. 40-2 at ¶ 21).  According to Defendant Vaughn, this is the

only proposal for Asatru weekly religious services he has received since 2015 (*Id.* at ¶ 15), which

Plaintiff disputes.  Plaintiff points to his February 2017 grievance, in which the counselor

indicates a proposal was being considered by Vaughn (*see* Doc. 45 at 21-22).  Plaintiff also

testified that he submitted a proposal for Asatru group services and feasts in 2018 (Doc. 40-1 at 8).

This proposal remained pending at the time Defendants filed their motion for summary judgment.

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

Defendants assert they are entitled to summary judgment because: (1) Plaintiff's claim as to weekly religious services and possession of his runes is not ripe; (2) any restriction on Plaintiff's religious exercise was reasonably related to a legitimate penological interest; (3) Plaintiff's rights under RLUIPA were not violated because Plaintiff has failed to show his exercise of religion was substantially burdened and the burden imposed was the least restrictive means for furthering a compelling interest; and (4) they are entitled to qualified immunity.

**Count One – First Amendment claim against Brookhart and Vaughn**

Under the First Amendment, prisoners enjoy a right to the free exercise of their religion. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). However, a prison may impose restrictions on the exercise of religion that are reasonably related to the legitimate penological objectives of the state. *Tarpley v. Allen County, Ind.*, 312 F.3d 895, 898 (7th Cir. 2002) (citations omitted). In determining whether an asserted justification is rationally related to a legitimate penological objective, courts consider whether there are alternative means of exercising the right that remain open to the inmate, the impact an accommodation of the asserted right would have on guards and other inmates, and whether there are "obvious alternatives" to the restriction. *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009).

*Ripeness*

As a preliminary matter, the Court considers Defendants' argument that Plaintiff's claims in Count One are not ripe. Article III, Section 2 of the Constitution grants jurisdiction to the federal courts to adjudicate only "actual, ongoing controversies." *Loertscher v. Anderson*, 893 F.3d 386, 392 (7th Cir. 2018) (internal quotations and citations omitted). To determine ripeness, courts examine (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Metropolitan Milwaukee Ass'n of Commerce v. Milwaukee Cty.*, 325 F.3d 879, 882 (7th Cir. 2003).

With regard to the first factor, Defendants argue Plaintiff's claims are not yet ripe because he has not been denied services. Defendants assert no final administrative decision has been made on Plaintiff's proposal for weekly religious services and his request for a rune set. The Court disagrees. In viewing the evidence in the light most favorable to Plaintiff, the Court finds Plaintiff has demonstrated he has been denied services related to his religious practice since he

began requesting the same in 2016.   Despite his efforts to contact Defendants Vaughn and Brookhart, no group services have been offered.   Defendants also fail to cite any authority standing for the proposition that Plaintiff's claim is only ripe after receiving a final determination on a proposal submitted to the IDOC's Religious Practice Advisory Board.

The Court also finds Plaintiff has demonstrated hardship insofar as he has been unable to practice his faith in a group setting, and with the items (i.e. a rune set) required for his faith.   For these reasons, the Court finds Plaintiff's claims are ripe for review.

### *Legitimate Penological Interest*

Defendants also argue Plaintiff's First Amendment rights were not violated because the restrictions imposed on his religious exercise were reasonably related to a legitimate penological interest.   As mentioned above, the Seventh Circuit has held that a prison regulation may impinge on inmates' constitutional rights if the regulation is related to legitimate penological interests, which include security and economic concerns.   *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009) (citation omitted).

First, Defendants argue there is a valid, rational connection between the previous decision to discontinue Asatru group services and denying Plaintiff certain religious items to ensure institutional order, safety, and security.   Defendants reiterate that Asatru group services were discontinued in 2015 due to STG activity and safety and security concerns.   Defendants point to Defendant Vaughn's declaration, in which he asserts gangs pose a serious threat to the safety and security of a correctional institution by violating various prison rules, trading and trafficking contraband, exploiting offenders, participating and ordering assaults on inmates and staff, and participating or conducting illegal activity (Doc. 40-2 at ¶¶ 13-14).   With regard to Plaintiff's request for certain items to be used for religious activities, including a rune set, Defendants explain

Page **6** of **13**

these items are prohibited due to safety and security concerns.   Defendant Vaughn attests that rune sets are prohibited because they have been used by offenders to manipulate others to commit assaults or violence, or manipulate other offenders into thinking something negative will happen to them (Doc. 40-2 at ¶ 49).   Defendant Vaughn consulted with Chief Chaplain Keim in regards to the prohibition of rune sets at Lawrence (*Id.*).   Plaintiff argues he has never heard of any Asatru practitioners using rune sets to manipulate other offenders.

Based on the evidence in the record, it is not apparent that the prohibition on Asatru group services in 2016 and beyond is reasonably related to a legitimate penological purpose.   Indeed, Defendants' reliance on an apparently isolated event related to one inmate that occurred in 2015 appears misplaced.   As argued by Plaintiff (and not contradicted by Defendants), the inmate who submitted the STG material is no longer at Lawrence and there is no other evidence of STG activity concerning the Asatru religion before the Court.   Although the Court recognizes that alternative means exist for Plaintiff to exercise his religion, including individual worship in his cell, there does not appear to be sufficient alternatives to group worship.   Moreover, it is not apparent that allowing group services would have a significant, negative impact on guards and other inmates as other religions attend group services and, while the Court recognizes the complexities in scheduling such services, it is apparent it can be accomplished.   For these reasons, a reasonable jury could find the denial of group services requested by Plaintiff was not related to a legitimate penological objective and was a violation of Plaintiff's First Amendment free exercise rights.

The Court, however, reaches a different conclusion with regard to Plaintiff's request for a rune set.   Defendant Vaughn explains that inmates may not possess a personal rune set due to the potential the runes could be used to manipulate other offenders.   Other courts have accepted this,

or similar arguments, in concluding that a ban on rune cards was reasonably related to these legitimate penological interests. *See, e.g., Kramer v. Wisconsin Dep't of Corrections*, 10-cv-224-slc, 2011 WL 13187095, *16 (July 26, 2011 W.D. Wis.).   Further, the Court recognizes that Plaintiff possesses a number of items as religious property to practice his Asatru faith, including a medallion and cardboard hammer.   There is also a rune set available for use in the chapel.   Accordingly, when viewing the totality of the circumstances, the Court finds that the prohibition on Plaintiff's personal possession of a rune set was rationally related to a legitimate penological objective and his First Amendment rights were not violated with regard to the same.

Although the Court finds a question of fact as to whether Plaintiff's First Amendment rights were violated due to the denial of his requests for group services, the Court must also consider Defendants' argument that they are entitled to qualified immunity on this claim.

### Qualified Immunity

Generally, government officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001).   Thus, in order to evaluate a claim of qualified immunity, the Court engages in a two-part inquiry.   The first question is whether the defendants' conduct violated a constitutional right.   *Volkman v. Ryker*, 736 F.3d 1084, 1090 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled in part by *Pearson v. Callahan*, 555 U.S. 223 (2009)).   The second question is whether that particular constitutional right was "clearly established" at the time of the alleged violation.   *Id.*   The two questions may be considered in either order.   *Volkman*, 736 F.3d at 1090 (citing *Pearson*, 555 U.S. at 236-42).

For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The unlawfulness of a particular official's action must be apparent "in light of the pre-existing law." *Id.* A party may demonstrate that a right was clearly established by presenting a closely analogous case establishing the defendant's conduct was unconstitutional or by presenting evidence the defendant's conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court. *See Hope*, 536 U.S. at 739-40.

The Court finds that the proper inquiry in this instance is whether it was clearly established that Defendants Lashbrook and Vaughn were constitutionally required to allow group services for Asatru practitioners at Lawrence. Under the circumstances here, in which Plaintiff had not yet found a volunteer to lead group services as required per the Illinois Administrative Code, 20 ILCS 425.60, or satisfied the conditions to hold religious activities for which program volunteers or chaplains are unavailable, *see* 20 ILCS 425.60(f)(1)-(6), Defendants did not violate any clearly established constitutional right. Indeed, the Seventh Circuit has pronounced that "[i]t has never been clearly established that inmates have a right to inmate-led group worship under the First Amendment." *West v. Grams*, 607 F. App'x 561, 565 (7th Cir. 2015). Thus, even though Defendants did not specifically argue they had a legitimate penological interest in denying group services based on Plaintiff's inability to secure volunteer leadership, it would be an extension of the existing law to find a constitutional violation of the facts presented in this case. Accordingly, Defendants are entitled to qualified immunity on Count One.

**Count Two – RLUIPA Claim**

Inmates are also afforded religious protections under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which prohibits prisons receiving federal funds from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.  42 U.S.C. § 2000cc-1(a).  Unlike cases arising under the Free Exercise Clause of the First Amendment, RLUIPA applies even where the burden on the prisoner "results from a rule of general applicability."  *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008).  In establishing a claim under RLUIPA, the plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion, and (2) that the challenged practice substantially burdens that exercise of religion.  42 U.S.C. §2000cc-1.  Once the plaintiff establishes his prima facie case, the defendants "bear the burden of persuasion on any [other] element of the claim," *id.*, namely, whether their practice "is the least restrictive means of furthering a compelling governmental interest."  *Koger*, 523 F.3d at 796.

To survive summary judgment, a plaintiff must submit evidence from which a jury could reasonably find that a defendant personally and unjustifiably placed a substantial burden on his religious practices.  *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016) (*citing Hernandez v. Comm'n of Internal Revenue*, 490 U.S. 680, 699 (1989), *Vinning-El*, 657 F.3d at 592 (other citations omitted)).  In determining whether a particular restriction substantially burdens a religious practice, courts should consider whether the restriction "seriously" violates or contradicts an inmate's religious beliefs.  *Schlemm v. Wall*, 784 F.3d 362, 364-65 (7th Cir. 2015).

First, the Court considers the inability of Plaintiff to engage in group services.  Plaintiff

Page **10** of **13**

argues his religious practice is substantially burdened due to his inability to engage in group practice in the chapel.   Defendants assert Plaintiff has numerous alternative means with which to practice his religion, thus, no substantial burden has been placed on his religious exercise. Defendant's argument is misplaced.   RLUIPA covers "any exercise of religion" and, therefore, "listing other ways in which plaintiffs may practice their … faith does not diminish the impact of being denied another one of their substantial religious exercises."   *Aiello v. West*, 207 F.Supp.3d 886, 895 (Sep. 14, 2016 W.D.Wis.) (citing *Schlemm v. Wall*, 784 F.3d 362, 364 (7th Cir. 2015)). Notably, the alternative means with which Plaintiff may practice his religion do not involve group worship or the opportunity for group worship.   Although the evidence Plaintiff has submitted thus far is slight, consisting of statements that he previously engaged in group worship and his group exercise is substantially burdened because it "hasn't happened," it is sufficient to establish his prima facie case at this juncture.

The next question under RLUIPA is whether Defendants are able to establish that the ban on Asatru group services is the least restrictive means to further a compelling interest. Defendants again point to the ban on Asatru group services in 2015 due to STG activity of white supremacists.   As articulated above, Defendants' reliance on an apparently isolated event related to one inmate that occurred in 2015 to justify the ban on Asatru group practice is misplaced. Further, a total prohibition on Asatru group services is not the least restrictive means to ensure the safety and security of the institution.   Accordingly, the Court finds there is insufficient evidence in the record for Defendants to meet their burden of demonstrating the prohibition on Asatru group services was the least restrictive means of furthering a compelling governmental interest. Summary judgment on this claim will therefore be denied.

With regard to the prohibition on the possession of a rune set, the Court again comes to a

Page **11** of **13**

different conclusion.   First, Plaintiff makes no specific argument concerning whether it substantially burdened his religious practice.   Moreover, the Court finds Defendants have demonstrated the ban is in furtherance of a compelling interest (to ensure inmates are not able to manipulate other inmates) and is the least restrictive means to achieve such interest.   Indeed, Plaintiff has access to a rune set for use in the chapel.   In light of all the evidence in the record, summary judgment will be granted on Plaintiff's RLUIPA claim concerning the ban on his personal possession of a rune set.

### Conclusion

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. 39) is **GRANTED IN PART AND DENIED IN PART**.   The Clerk of Court is directed to enter judgment in favor of Defendants David Vaughn and Deanna Brookhart (in her individual capacity) and against Plaintiff Andrew Morecraft at the close of this case.

Plaintiff will proceed in this action on the following claim:

Count Two:   Director Jeffreys and Warden Brookhart violated Plaintiff's rights under the Religious Land Use and Incarcerated Persons Act ("RLUIPA") when they denied him access to group worship services.

As for trial, under RLUIPA, Plaintiff is limited to declaratory and injunctive relief.   *See West v. Grams*, 607 F. App'x 561, 566 (7th Cir. 2015) (citations omitted).   Accordingly, Plaintiff has no right to a jury trial.   *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 966 (7th Cir. 2004) ("There is no right to a jury where the only remedies sought (or available) are equitable.").   The Court, therefore, will hold a bench trial on Plaintiff's RLUIPA claim related to Asatru group services.   *See* Fed. R. Civ. P. 39(a)(2) ("The trial on all issues so demanded must be by jury unless … the court, on motion or on its own, finds that on some or all of those issues there is no federal

right to a jury trial.").

**IT IS SO ORDERED.**

**DATED: July 6, 2020**

s/  *Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**